**U.S. Department of Justice**

United States Attorney
District of Maryland
Northern Division

---

*Rod J. Rosenstein*
*United States Attorney*

*Michael Cunningham*
*Assistant United States Attorney*

*36 South Charles Street*
*Fourth Floor*
*Baltimore, Maryland 21201*

*DIRECT: 410-209-4884*
*MAIN: 410-209-4800*
*FAX: 410-962-3091*
*TTY/TDD: 410-962-4462*
*michael.cunningham@usdoj.gov*

December 13, 2010

via email and hardcopy
lbrosenberg@aol.com

Lawrence B. Rosenberg, Esq.
Court Square Building, Ste 909
200 E. Lexington Street
Baltimore, Maryland 21202-3530

> Re:    *United States v. Scott B. Seidel*
>         Criminal # ELH-11-99

Dear Mr. Rosenberg:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by December 23, 2010, it will be deemed withdrawn. The terms of the agreement are as follows:

Offense of Conviction

1.      The Defendant agrees to waive indictment and plead guilty to a Criminal Information charging him with possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

Elements of the Offense

2.      The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

a.      First, that on or about the dates charged in the Information, the Defendant knowingly possessed visual depictions of sexually explicit conduct;

Revised 11/5/09

b.      Second, that the Defendant knew that the production of the visual depictions involved the use of minors engaging in sexually explicit conduct, and knew that the visual depictions were of such conduct; and

c.      Third, that the visual depictions were mailed, shipped or transported in interstate or foreign commerce or produced using materials that had been mailed, shipped or transported in interstate or foreign commerce by any means, including by computer..

## Penalties

3.      a.      The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: a maximum of ten (10) years' imprisonment, a $250,000 fine and supervised release for life.  In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing.  This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1]  If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise.  The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

b.      The defendant understands and agrees that as a consequence of his conviction for the crimes to which he is pleading guilty, he will be required to register as a sex offender in the place where he resides, where he is an employee, and where he is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA),[2] and the laws of the state of his residence. Failure to do so may subject him to new charges pursuant to 18 U.S.C. § 2250.

## Waiver of Rights

4.      If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel.  That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

---

[1]Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

[2]See the Adam Walsh Child Protection and Safety Act of 2006 (Walsh Act), P.L. 109-248, enacted July 27, 2006.

      a.     If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

      b.     The Defendant has the right to have his case presented to a Grand Jury, which would decide whether there is probable cause to return an indictment against him. By agreeing to proceed by way of Information, he is giving up that right, and understands that the charges will be filed by the United States Attorney without the Grand Jury.

      c.     If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

      d.     The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

      e.     If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

      f.     By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

      g.     If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

      h.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can

lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998.  The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6.      This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

a.      The base offense level for the offense of conviction is eighteen (18) pursuant to U.S.S.G. § 2G2.2(a)(1).

b.      Pursuant to U.S.S.G. §2G2.2(b)(2), there is a two (2) level increase because the material involved a prepubescent minor.

c.      Pursuant to U.S.S.G. §2G2.2(b)(6), there is a two (2) level increase because the possession involved the use of a computer.

d.      Pursuant to U.S.S.G. §2G2.2(b)(6), there is a four (4) level increase because the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence.

e.      Pursuant to U.S.S.G. §2G2.2(b)(5)(D), there is a five (5) level increase because the offense involved a pattern of activity involving the sexual abuse or exploitation of a minor.

f.      Pursuant to U.S.S.G. §2G2.2(b)(7)(D), there is a two (2) level increase because the offense involved between 10 and 150 images.

The resulting offense level is **33.**

4

g.      This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct.  This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty.  This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about his involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (vii) attempts to withdraw his plea of guilty.  The resulting offense level is **30.**

7       The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8.      This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

## Rule 11 (c) (1) (C) Plea

9.      The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence within the range of **24 to 97 months** is the appropriate disposition of this case.  This agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release.  In the event that the Court rejects this plea agreement, *either* party may elect to declare the agreement null and void.  Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).

10.     The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

## Forfeiture

11.     The defendant understands that the court will, upon acceptance of his guilty plea, enter an order of forfeiture as part of his sentence, and that the order of forfeiture may include assets directly traceable to his offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense.  Specifically, the court will order the forfeiture of any and all computers and related hardware and software used in the acquisition,

retention, storage or use of child pornography, including but not limited to the following: <u>all computers, peripherals and other property tied to acquisition and retention of child pornography that were seized by law enforcement which have heretofore not been returned to the defendant</u>. The defendant consents to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

## Assisting the Government with Regard to the Forfeiture

12.     The defendant agrees to assist fully in the forfeiture of the foregoing assets. The defendant agrees to disclose all of his assets and sources of income to the United States, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including but not limited to executing any and all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. The defendant further agrees that he will not assist any third party in asserting a claim to the forfeited assets in an ancillary proceeding and that he will testify truthfully in any such proceeding.

## Waiver of Further Review of Forfeiture

13.     The defendant further agrees to waive all constitutional, legal and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The defendant also agrees not to challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this agreement, and will not assist any third party with regard to such challenge or review or with regard to the filing of a petition for remission of forfeiture.

## Waiver of Appeal

14.     In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a.     The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

b.     The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution,

and term or condition of supervised release), <u>except</u> as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds **97 months** (ii) and this Office reserves the right to appeal any term of imprisonment to the extent that it is below **24 months** imprisonment.

     c.     Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

     d.     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

Court Not a Party

15.     The Defendant expressly understands that the Court is not a party to this agreement. The Defendant understands that the Court is under no obligation to accept this plea offer made pursuant to Rule 11(c)(1)(C).

Entire Agreement

16.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Addendum, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and addendum and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this letter, please sign and have the Defendant sign the original and return it to me promptly.

     Very truly yours,

     Rod J. Rosenstein
     United States Attorney

By: _____
     P. Michael Cunningham
     Assistant United States Attorney

I have read this agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

2/25/2011
Date

Scott B. Seidel

I am Scott B. Seidel's attorney. I have carefully reviewed every part of this agreement with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

2/28/11
Date

Lawrence B. Rosenberg, Esquire
Michael J Tomko, Esquire

8

**EXHIBIT A**
**STIPULATED FACTS**

The undersigned parties hereby stipulate and agree that if this case had proceeded to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.

Scott B. Seidel, age 21 is a resident of Owings Mills, Maryland, where he lives with his mother, step-father and minor brother. As of July 2009, there were six computers in the residence, all with Internet access. Internet service was provided by Comcast in the name of one of his parents. Mr. Seidel, routinely accessed the Internet, mainly using email address scott@allstartitleinc.com or sseidel1@ycp.edu.

Mr. Seidel had his own laptop computer which he obtained approximately two to three months before he graduated from high school in 2007. Mr. Seidel logged into the laptop with the username "admin" and the password "simpson."

Mr. Seidel used the computer mainly for email, online banking, and to stay in contact with friends. Mr. Seidel used MSN Chat with the account scott.ycp.2011@hotmail.com. He also maintained a Skype account with username "scott.seidel2" and the password "paramedic". Mr. Seidel usually got online after 10 p.m.

Mr. Seidel occasionally used a false identity online which was usually another name beginning with "S" such as Steve. Mr. Seidel regularly visited the website teen-video-chat.com and was on the website the afternoon of July 19, 2009. The website allowed users to communicate via chat and webcam and is meant for users age 13 to 19.

9

General users of the teen-video-chat.com could either register or they can create a one-time-use username each time they visit.  Mr. Seidel belonged to a group of about 15 to 20 regular users of the site which are referred to as "Regs."  The Regs talked about users' behavior and point out the usernames of users who are not teenagers.  They also discuss users who exposed themselves inappropriately on their webcams.

Chat and webcam feeds are visible to all users in a room unless a user "whispers" to another user, or initiates a private chat session.  Users have to accept another person's request to engage in a private chat.  "Whispers" are sent to users without any option to accept or decline them.  Moderators cannot see what occurs between two users engaged in private chat.

Mr. Seidel has used various usernames on teen-video-chat.com including his AIM login and his Skype username without his last name.  He never turns on his webcam when he visits the site.  The webcam and a microphone are built into his laptop.  In about April or May, 2009, Mr. Seidel established the email account ag_reaves@hotmail.com.  Mr. Seidel made the account in order to try to act as a moderator of the teen-video-chat.com website.  He would tell people he was FBI Agent Jason Reaves in order to get older people to leave the site.  The "ag" in the email address stands for "agent."  Mr. Seidel did not know anyone who actually works for the FBI.

Mr. Seidel used the Jason Reaves identity to get approximately 100 older men to leave the teen-video-chat.com website.  He claimed to be an FBI agent and threaten to "track" them if they did not get off the site.  Mr. Seidel also used usernames beginning with the letters "mod" on teen-video-chat.com so that it would appear he was a moderator.  He would usually use "mod" followed by four numbers.  "Moderator Kelly" is a name Mr. Seidel often used on the website.  He pretended to be a female moderator because the adults he contacted were less likely to block him from talking to

10

them.  Often the adults would ask "Moderator Kelly" if "she" wanted to see them on their webcam.

Mr. Seidel has contacted females on teen-video-chat.com posing as a moderator and told them to contact Jason Reaves via MSN chat.  He estimated he has tried this approximately ten times, and on approximately two to three occasions the individuals have actually contacted him via MSN.

Mr. Seidel would contact a female user in the teen-video-chat.com chat room and tell them that another user in the room was hacking their computer.  Sometimes Mr. Seidel would make up a username who was supposedly doing the hacking and then log back into the chat room as that user.  He has used the names "chillin," "shotcalla," and "likes younger girls" when posing as a hacker with "chillin" being most common.  Occasionally Mr. Seidel would say a real user who he didn't like was doing the hacking.

On three to five occasions, Mr. Seidel, simultaneously posing as FBI agent Jason Reaves and a computer hacker, would inveigle young, female teen chat room users – some of whom represented themselves to be as young as 13 – to expose themselves to him and perform specific sexual acts while exposed to the internet webcam.   Mr. Seidel inviegled at least one victim by threatening to have FBI agents come to her home unless she continued to chat with the alleged hacker – his alter ego – and comply with the demands of the hacker, who caused her to remove her clothes and insert her finger into her vagina.  Mr. Seidel convinced the young girl that she needed to remain in the chat and compliant with the demands of the alleged hacker to give Agent Reaves time to identify the hacker.  At least one young woman inserted a pen into her vagina, the images of which were transmitted and recorded on Mr. Seidel's laptop computer.

Mr. Seidel also viewed pornography on the Internet, and was a member of the website realitykings.com.  He used his debit card to pay for the subscription to this site which featured adult

11

pornography. He visited other adult pornographic websites and viewed their preview content.

LimeWire was installed on Mr. Seidel's computer but as of July 2009, he had not used it for a while. Previously, he used it to download music and pornography. He would use search terms such as "porn" and "sex." He would choose to download the files that were shared by the most users. He did this because he believed it would allow the download to complete faster. He downloaded both pornographic images and videos.

A forensic examination of Mr. Siedel's laptop revealed numerous images of young females which correspond to his statements about the streaming webcam images of teenage girls with whom he would chat while pretending to be an FBI agent. Some of these images portray the young women in sexually provocative poses and in at least one series of photos, the girl appears to be inserting a pen into her vagina.

Additionally, there were a series of about 150 images of a prepubescent girl, who appears to be around 10 years old, at least half of which display the nude or partially nude child in a manner that meets the definition at 18 U.S.C. § 2256(8) of child pornography.

I have read this statement of facts, and carefully reviewed it with my attorney. I acknowledge that it is true and correct.

_____          _____
Date                             Scott B. Seidel
                                 Defendant

_____          _____
Date                             Lawrence B. Rosenberg, Esquire
                                 Defendant's Counsel